<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NICOLE LITTLE, ELLISTON LITTLE, and their minor child, M.L.<br><br>Plaintiffs,<br><br>v.<br><br>WEST ORANGE SCHOOL DISTRICT and ANA MARTI,<br><br>Defendants. | Civil Action No. 23-cv-00402-JKS-CLW<br><br>**OPINION**<br><br>August 19, 2024 |

**SEMPER**, District Judge.

Before the Court is Defendants West Orange School District and Ana Marti's ("Defendants") motion to dismiss Plaintiffs' Amended Complaint. (ECF 25.) Plaintiffs Nicole Little and Elliston Little opposed the motion. (ECF 28, "Opp.") Defendants filed a reply. (ECF 29, "Reply.") Plaintiff M.L. retained an attorney, and this Court granted M.L. leave to file a supplemental opposition and allowed Defendants to file a supplemental reply. (ECF 34.) M.L. filed a supplemental opposition (ECF 35-2, "Supp. Opp."), and Defendants filed a supplemental reply. (ECF 36, "Supp. Reply.") The Court reviewed the Plaintiffs' Amended Complaint (ECF 22, "Am. Compl.") and the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Plaintiffs Nicole Little, Elliston Little, and their son M.L. moved to West Orange, New Jersey in November 2021. (Am. Compl. at 3.) M.L. enrolled as a first-grade student at Hazel Avenue Elementary School ("Hazel"). (*Id.*) M.L. struggled to adjust to the new school, and staff stated he displayed behavioral issues. (*Id.* at 7.)

In M.L.'s first week at Hazel, M.L.'s classroom teacher cleared the classroom of all students because M.L. held up safety scissors, which made the teacher feel unsafe. (*Id.* at 4.) M.L. was left alone crying in the classroom. (*Id.* at 4.) Soon after, M.L.'s parents had a conference with his teacher, guidance counselor, and principal. (*Id.*) At the meeting, M.L.'s father "explained that he would not tolerate the actions of the teacher which amounted to psychological abuse of his son." (*Id.*) Plaintiffs allege that thereafter, "the staff began a campaign to vilify ML, treat him as other and retaliate when his parents sought to intervene." (*Id.*)

M.L. was often removed from the classroom, "triggering distressed behavior[.]" (*Id.*) The school recommended that M.L. be assessed for "psychological problems" and a "special education designation." (*Id.*) However,

> [i]n spite of making serious claims about ML's academic deficiencies, defendants failed to provide him with academic support in the school. Defendant refused to offer homework assistance to ML even though students with similar deficiencies received the opportunity to attend after school tutoring. Furthermore, ML was excluded from the summer academic enrichment program, in 2022, run for general education students who had academic deficiencies.

(*Id.*) After the scissor incident, M.L. was routinely separated from other students by the principal during lunch and recess. (*Id.* at 5.)

---

[1] When considering a motion to dismiss under Rule 12(b)(6), the Court is obligated to accept as true allegations in the complaint and all reasonable inferences that can be drawn therefrom. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

On or about February 4, 2022, the school suspended M.L., stating he made threats toward the principal. (*Id.*) The school recommended the Family Center of Montclair ("Center") perform a mental health assessment of M.L. (*Id.*) A counselor there would have to clear M.L. before he returned to school. (*Id.*) Plaintiffs alleged that "[s]chool personnel dragged their feet in providing a referral form to the counselor at the Center, causing ML to miss more school than necessary." (*Id.*) The counselor stated he could not clear M.L. for a return for school. (*Id.*) The counselor told the parents that the school told him that M.L. intended to harm himself and directed M.L.'s parents to immediately take M.L. to the emergency room for psychiatric assessment. (*Id.* at 6.) Plaintiffs contest that the school never alerted M.L.'s parents to M.L.'s alleged statements about self-harm. (*Id.*) Moreover, Plaintiffs allege that M.L.'s threats, including threats regarding swords, "were actually passionate preoccupations of the boys in the class who were watching/playing a game called 'Minecraft.'" (*Id.* at 5.) Plaintiffs further assert that "the school fed the counsellor with false information so that ML would not be cleared for return to school." (*Id.* at 6.)

M.L.'s parents "were certain" that M.L. did not need psychiatric intervention. (*Id.*) M.L. saw a different psychologist who prepared a report that cleared M.L. for return to school. (*Id.*) Plaintiffs allege that the psychologist's report referenced an incident where the principal told M.L. he was "screaming like a baby." (*Id.*) M.L. told the psychologist that the principal "was laughing at me." M.L. told the psychologist that he told the principal that "it's not funny," but that the principal continued to express that "it is funny." (*Id.*) "According to the psychologist, ML was visibly and observably upset by this." (*Id.*) The psychologist recommended bolstering the relationship between M.L. and the principal. (*Id.*) Plaintiffs allege the principal "was extremely upset by the psychologist's report." (*Id.*)

On or about February 18, 2022, M.L. was absent from school for a funeral in Florida. (*Id.* at 7.) When he returned to school, he was told that pursuant to the school's COVID-19 policy, he would have to stay home for five days because he was unvaccinated (*Id.*) Plaintiffs assert that there is no evidence that this policy was enforced against other students who "undoubtedly" visited other states during the long weekend. (*Id.*) In order for M.L. to return to school, his parents obtained documentation that showed M.L. recently contracted COVID-19 and had natural immunity. (*Id.*)

Throughout the spring of 2022, M.L. was hesitant to go to school, and he would have a "look of trepidation on his face." (*Id.* at 8.) It would take him "a long time" to enter the school building each morning. (*Id.*) This surprised M.L.'s parents because prior to attending Hazel, he was excited to attend school. (*Id.*) M.L. could not name any friends from school, and he stated that other students probably did not want to play with him because "they think I'm bad or because my hair looks different from theirs." (*Id.*) M.L. was isolated at school. (*Id.*) At home, he began sleeping in his parents' bed, which he had not done in about two years. (*Id.*)

The district assigned M.L. a behaviorist who would observe M.L. and provide strategies to help him. (*Id.*) The behaviorist concluded that it would be better for M.L. to be removed from the classroom and be individually instructed. (*Id.*) Moreover, the school recommended, and M.L.'s parents agreed, that M.L. should be evaluated for special education services. (*Id.* at 9.) A child study team conducted this evaluation and was unable to establish a clear diagnosis. (*Id.*) The team did conclude, however, that M.L. had communication issues. (*Id.*) With this diagnosis, the school district recommended that M.L. be removed from the district. (*Id.*) On the day the school's diagnosis was sent to M.L.'s parents, M.L. hit the principal and was suspended. (*Id.*)

Plaintiffs further alleged that M.L. was adversely affected because of implicit and explicit bias. (*Id.* at 7.)

> School staff claimed that ML was aggressive, threatening and other racist tropes typically used against black males. It was a shock that ML, a six-year-old, could already be subject to this sort of oppressive and unlawful treatment. The principal, ML's teacher and other staff made statements by making repeated references to the fact that ML was transferring from East Orange, which consists of predominantly black population.

(*Id.*)

Plaintiffs allege that M.L.'s parents explained to the principal and superintendent that he puts pressure on himself to succeed in school and is "very academically driven so he gets frustrated when he is unable to perform." (*Id.*) Plaintiffs allege that the school ignored this and instead chose "to view ML on as a bad behaving student and treated him accordingly." (*Id.* at 7-8.)

M.L. threw objects, screamed, and cried in class. (*Id.* at 8.) He stated that when he asked his teacher for help, she would not help him and instead told him to wait his turn. (*Id.*) M.L.'s teacher said her class was overcrowded, and that M.L. was not the only student in her classroom who needed her attention. (*Id.*)

Through their Amended Complaint, Plaintiffs purport to assert claims pursuant to "42 U.S.C. § 1983, The Equal-Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 2000 et seq. and 20 U.S.[C.] § 6301[.]" (*Id.* at 10.)

## II.     LEGAL STANDARD

### a.  Rule 12(b)(1)

Although styled as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, Defendants raise the issue of this Court's subject matter jurisdiction by stating that Plaintiffs failed to exhaust administrative remedies prior to filing their Amended Complaint. This argument is properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1). Because Defendants have raised the issue, the Court will treat it as one raised pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Garcia v. Richard*

5

*Stockton Coll. of N.J.*, 210 F. Supp. 2d 545, 548 (D.N.J. 2002) (treating defendant's motion to dismiss as one brought pursuant to Federal Rule of Civil Procedure 12(b)(1), despite defendant's description of the motion as one brought pursuant to Federal Rule of Civil Procedure 12(b)(6)); *Watson, v. Wash. Twp.*, No. 09-3650, 2010 U.S. Dist. LEXIS 60049, at *6 (D.N.J. June 17, 2010); (same).

Pursuant to Rule 12(b)(1), a complaint or portions of a complaint may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion to dismiss for lack of subject matter jurisdiction may be brought at any time and may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In a facial attack, all allegations in the complaint are considered true. *Id.* Defendants have attacked the complaint on its face, and so the Court will treat all allegations in Plaintiffs' Amended Complaint as true.

b.  **Rule 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under the Rule, it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations

6

omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

## III.  ANALYSIS

### A.  The IDEA's Exhaustion Requirement

Defendants assert that Plaintiffs' claims sound in the Individual with Disabilities Education Act ("IDEA") because the Amended Complaint concerns Defendants' purported failure to provide M.L. with a free, appropriate public education ("FAPE"). (Supp. Reply at 3-4.) Accordingly, Plaintiffs were required to exhaust the administrative process promulgated by IDEA before filing their lawsuit in district court. (*Id.*) In his supplemental opposition, M.L. argues that "M.L. was deprived of his right to an education free from bias or disparate treatment due to his race – a protected class as defined by Federal law[,]" and he therefore was not required to assert these claims through the administrative process. (Supp. Opp. at 8.)

The IDEA conditions a state's receipt of federal funds for special education programs on its implementation of "policies and procedures to ensure that . . . [a] free appropriate public education is available to all children with disabilities . . . ." 20 U.S.C. § 1412(a)(1)(A). A FAPE "consists of educational instruction specifically designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child to 'benefit' from the instruction." *Melissa S. v. Sch. Dist.*, 183 F. App'x 184, 186 (3d Cir. 2006) (quoting *W.B. v. Matula*, 67 F.3d 484, 491 (3d Cir. 1995) (overruled on other grounds) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 188-89 (1982))). The IDEA requires states to "implement specified procedural safeguards to ensure children with disabilities and their parents" receive due process. *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014). "These safeguards, known collectively as the IDEA's administrative process, provide parents with an avenue to file a

complaint and to participate in an impartial due process hearing with respect to '*any* matter *relating to* the identification, evaluation, or educational placement of the[ir] child, or the provision of [FAPE] to such child . . . .'" *Id.* (emphasis in original) (citing 20 U.S.C. §§ 1415(b)(6)(A), (f)(1)(A)). Parties may only commence a civil action in district court following the completion of an administrative hearing. *See* 20 U.S.C. § 1415(i)(2)(C)(i)-(iii). A plaintiff's failure to exhaust administrative remedies under the IDEA deprives federal courts of subject matter jurisdiction. *M.S. v. Marple Newtown Sch. Dist.*, 635 F. App'x 69, 71 (3d Cir. 2015) (citing *Batchelor*, 759 F.3d at 272).

In some circumstances, these requirements apply to non-IDEA claims. Section 1415(l) of the IDEA requires plaintiffs to exhaust the IDEA's administrative process not only in actions directly under the statute, but also "in non-IDEA actions where the plaintiff seeks relief that can be obtained under the IDEA." *Batchelor*, 759 F.3d at 272. "This provision bars plaintiffs from circumventing [the] IDEA's exhaustion requirement by taking claims that could have been brought under IDEA and repackaging them as claims under some other statute—*e.g.*, section 1983, section 504 of the Rehabilitation Act, or the ADA." *Id.* (quoting *Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 281 (3d Cir. 1996)).

In *Fry v. Napoleon Community Schools*, 580 U.S. 154 (2017), the Supreme Court interpreted Section 1415(l) to require exhaustion if "the substance, or gravamen, of the plaintiff's complaint" seeks relief for the denial of a FAPE. *Id.* at 165. *Fry* set forth a framework to assist courts in making this determination. Specifically, the analysis of whether a claim concerns the denial of a FAPE should be guided by two inquiries: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library"; and (2) "could an *adult* at the school—say, an employee

or visitor—have pressed essentially the same grievance"? *T.R. v. Sch. Dist. of Phila. L.R.*, 4 F.4th 179, 185-86 (3d Cir. 2021) (emphasis in original) (quoting *Fry*, 580 U.S. at 171). If the answer to those questions is no, then the claim "probably does concern a FAPE, even if it does not explicitly say so[.]" *Fry*, 580 U.S. at 171. The Third Circuit has interpreted the *Fry* framework to apply to both individual claims included in a complaint and the complaint in its entirety. *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 132-33 (3d Cir. 2017).

Here, the Court addresses the Amended Complaint in its entirety. *See id.* the "gravamen" of Plaintiffs' Amended Complaint seeks relief for the denial of a FAPE. *See Fry*, 580 U.S. at 165. For example, the Amended Complaint states that

> defendants failed to provide [M.L.] with academic support in the school. Defendant refused to offer homework assistance to ML even though students with similar deficiencies received the opportunity to attend after school tutoring. Furthermore, ML was excluded from the summer academic enrichment program, in 2022, run for general education students who had academic deficiencies.

(Am. Compl. at 4.) The Amended Complaint asserts that M.L.'s teacher did not help him when he needed it, staff did not respond appropriately if M.L. misbehaved in class, and school staff was not responsive to M.L.'s needs. (*Id.* at 7-8.) Pursuant to the Supreme Court's framework in *Fry*, the Court first assesses whether claims based on a failure to meet M.L.'s educational needs could be brought at a public facility that was not a school, such as a public theater or library. *Fry*, 580 U.S. at 171. Plaintiffs' claims based on a failure to provide M.L. with an adequate education by meeting his educational needs could not be asserted against a public facility other than a school. Second, the Court assesses whether an adult employee or visitor at M.L.'s school could assert a claim for the same grievances. *Id.* An adult visitor or employee at the school could not assert claims based on a failure to provide an appropriate education because they are not students at the school entitled to FAPE. Therefore, Plaintiffs were required to exhaust IDEA's administrative process prior to

9

filing their lawsuit in district court. Furthermore, as explained by the Supreme Court in *Fry*, "[a] further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings." *Fry*, 580 U.S. at 173. Plaintiffs' original Complaint (ECF 1) sought relief available pursuant to IDEA, for example: "Plaintiffs seek ongoing tutoring lessons for M.L. and opportunities for enrichment[.]" (ECF 1 at 7.) This is another indication that Plaintiffs' lawsuit concerns a FAPE.

While Plaintiffs' oppositions to the motion to dismiss assert that M.L. did not receive academic support because of his race, the Amended Complaint does not connect allegations of race-based discrimination to a denial of educational services to M.L. A complaint may not be amended by the briefs in opposition to a motion to dismiss. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988); *see also Ibrahim v. DeFilippo*, No. 19-5021, 2021 WL 753898, at *8 (D.N.J. Feb. 26, 2021) ("It is well-settled that Plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion."). Accordingly, Plaintiffs' Amended Complaint is **DISMISSED** without prejudice for lack of subject matter jurisdiction.[2]

## IV.     CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (ECF 25) is **GRANTED.** An appropriate order follows.

*/s/ Jamel K. Semper          .*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:     Cathy L. Waldor, U.S.M.J.
        Parties

---

[2] Because the Amended Complaint is dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), this Court will not address the parties' arguments concerning dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).